UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACK VIGLIOTTI,

                              Plaintiff,                    **REPORT AND**
                                                           **RECOMMENDATION**
v.
                                                           08-CV-00875(S)(M)
DIRECTOR DONALD SELSKY
CAPTAIN KEARNEY
C.O. TIMOTHY BENSON,

                              Defendants.
_____

        This case was referred to me by Hon. William M. Skretny for supervision of

pretrial proceedings, including preparation of a report and recommendation on dispositive

motions [6].[1]  Before me is defendants' motion to dismiss the complaint pursuant to Fed. R. Civ.

P. ("Rule") 12(b)(1) and (6) [4].  For the following reasons, I recommend that defendants'

motion be GRANTED in part and DENIED in part.


                                **BACKGROUND**

        Plaintiff commenced this action *pro se* on November 25, 2008 pursuant to 42

U.S.C. §1983, alleging that on September 12, 2005, while he was incarcerated at the Wende

Correctional Facility, he was assaulted by defendant Correctional Officer Timothy Benson.

Complaint [1], First Cause of Action.  Plaintiff further alleges that certain due process violations

occurred at his disciplinary hearing, conducted by defendant Captain Martin Kearney, arising

from the incident.  Id., Second Cause of Action.  On October 18, 2005 Captain Kearney found

plaintiff guilty of some of the charges against him and sentenced him to 180 days of confinement

---

        [1]        Bracketed references are to CM/ECF docket entries.

in the Special Housing Unit ("SHU") and 180 days loss of packages, television, commissary, and telephone. <u>Id</u>. at ¶21, p. 11.  On December 7, 2005, defendant Donald Selsky, the Director of Special Housing, denied plaintiff's appeal and affirmed defendant Kearney's determination.  <u>Id</u>. at ¶24, p.14.

Defendants move to dismiss the complaint in its entirety arguing that it is barred by the statute of limitations and all official capacity claims on sovereign immunity grounds. Alternatively, defendants seek to dismiss plaintiff's due process claims based upon a lack of a protected liberty interest.


## ANALYSIS

### A.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, ___U.S.___, 129 S. Ct. 1937, 1949 (2009).

"In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

**B.     Are Plaintiff's Claims Timely?**

Defendants argue that plaintiff's claims are untimely as against defendants Kearney and Benson. Defendants' Memorandum of Law, Point I.   Plaintiff argues that his claims were tolled due to insanity and exhaustion of administrative remedies.

"The statute of limitations for Section 1983 actions filed in New York is three years." Weisshaus v. New York,  2009 WL 2579215, *4 n.6  (S.D.N.Y. 2009).  The parties agree that this action was commenced on November 25, 2008. Defendants' Reply [16], p. 2.  Thus, absent tolling, these claims would have had to have accrued on November 25, 2005, or later,  to have been timely interposed.

**1.     Were Plaintiff's Claims Tolled Because of His Alleged Insanity?**

Plaintiff relies on a period of insanity to argue that his claims are timely.  "State tolling provisions govern requests to toll the statute of limitations in §1983 actions. . . .  In New York, the statute of limitations period may be extended if the claimant 'is under a disability because of infancy or insanity at the time the cause of action accrues.' McKinney's C.P.L.R. §208." Smith v. Doctor,  2007 WL 3232087, *1 (E.D.N.Y. 2007). In McCarthy v. Volkswagen of Am., Inc., 55 N.Y. 2d 543, 548 (1982), "the Court of Appeals [  ] stated that New York's insanity toll should be 'narrowly interpreted' based on its legislative history, which indicates that efforts to substitute the phrase 'mental illness' for 'insanity' were rejected. . . .  The Court

concluded that the insanity toll applies 'only to those individuals who are unable to protect their legal rights because of an overall inability to function in society.'" Joseph S. v. Hogan, 561 F. Supp. 2d 280, 315 (E.D.N.Y. 2008). The insanity toll "'embraces a temporary unsoundness of mind as indicated by the proof, and is not to be confined to chronic or fixed conditions'." Hurd v. Allegany County, 39 A.D. 2d 499, 503 (4th Dep't. 1972), abrogated on other grounds, McCarthy, supra, 55 N.Y.2d at 549 n. 3. "The burden is on the plaintiff to establish eligibility for such tolling." Carmichael v. Hobbs, 2008 WL 697347, *2 (E.D.N.Y. 2008).

        The medical records submitted by plaintiff establish that on November 4, 2005 he "overdosed with a quantity of medical meds" while incarcerated at Auburn Correctional Facility Plaintiff's Opposition [15], Ex. A-4. He then went on a self imposed hunger strike through at least through November 14, 2005 and was under treatment of the Central New York Psychiatric Center. Id., A-5. The November 14, 2005 progress notes indicate that defendant "remains adamant to die" (id.) and by November 18, 2005 had dropped from 205lbs to 177lbs. Id., A-6. On December 23, 2005 plaintiff was released to the Clinton Correctional from the Central New York Psychiatric Center. Id., A-10 and A-11. Plaintiff was released from a psychiatric observation cell at Clinton Correctional Facility on December 27, 2005. Id., A-11.

        Contrary to defendants' argument, "plaintiff's argument is [not] that he suffered 'periodic bouts of depression' between September 12 and November of 2005." Defendants' Reply Memorandum of Law [16], p. 5. Rather, plaintiff makes clear that he was "unable to mange [*sic*] his affairs between 'November 4th - - - December 27, 2005' or comprehend, and protect his legal rights, because of an over-all inability to function." Plaintiff's Opposition [15],

p. 8; Plaintiff's Sur-Reply [17], p. 2 ("Plaintiff submits the controlling date for applicable tolling provisions . . . started on November 4th, 2005".)

Even accepting plaintiff's claim that he was insane from November 4, 2005 through December 27, 2005, "New York's tolling rules allow for tolling based on *insanity at the time the cause of action accrued*, N.Y. C.P.L.R. 208".  Carmichael, supra, 2008 WL 697347 at *2 (emphasis added); Swartz v. Berkshire Life Ins. Co., 2000 WL 1448627, *6 (S.D.N.Y. 2000) ("The plaintiff's argument is without merit because Berkshire determined that Mr. Swartz was disabled beginning in 1995, not 1991 [when the claim accrued], and Mr. Swartz would have had to have been insane in 1991 in order to take advantage of the tolling provision of §208".).  Thus, plaintiff can only take advantage of the insanity toll if he was insane at the time his claim accrued.

Unlike tolling, which is governed by state law, *see* Smith v. Doctor, supra, 2007 WL 3232087 at *1, "under federal law, which governs the accrual of claims brought under §§1983 . . . , a claim generally accrues once the 'plaintiff knows or has reason to know of the injury which is the basis of his action.'" Cornwell v. Robinson, 23 F. 3d 694, 703 (2d Cir. 1994). Under this standard, plaintiff's claims arising from the excessive force against defendant Benson accrued on the date of the alleged assault, September 12, 2005, and his claims against defendant Kearney arising from the disciplinary hearing accrued on the date of his decision, October 18, 2005.  Thus, I need not resolve whether plaintiff was insane because even assuming that he was sufficiently insane to toll the statute of limitations, his claims in this suit accrued *prior* to the alleged onset of his insanity, thereby depriving plaintiff of this tolling provision.

**2.      Were Plaintiff's Claims Tolled While he Exhausted his Administrative Remedies?**

Plaintiff  also argues that "there is a general rule that a 'Statute of Limitations' does not run until there is a legal right to relief.  As in the case at bar. Which would be the date the administrative appeal was denied." Plaintiff's Opposition [15], ¶6.  Although plaintiff's argument is characterized in terms of accrual of the claim, the proper inquiry is whether the exhaustion of plaintiff's administrative remedies tolls the statute of limitations.

While the Second Circuit has not addressed the issue, "in light of [the] mandatory requirement [that an inmate exhaust all administrative remedies as a prerequisite to filing a section 1983 action], all of the courts of appeal addressing the issue have held that the limitations period for filing a section 1983 action is tolled while an inmate exhausts his administrative remedies." Bourguignon v. Armstrong, 2007 WL 2495230, *2 (D.Conn. 2007). *See* Petrucelli v. Hasty, 605 F. Supp. 2d 410, 418-419 (E.D.N.Y. 2009) ("'Every circuit to address the issue has held that the filing of a mandatory administrative grievance tolls the statute of limitations for §1983  and Bivens claims,'" quoting Roberts v. Barreras, 109 Fed. Appx. 224, 226 (10th Cir. 2004)).  Likewise, district courts in this Circuit have found that an inmate's exhaustion of administrative remedies tolls the statute of limitations for section 1983 actions.  *See* Bourguignon, supra, 2007 WL 2495230 at *4; Taylor v. New York State Department of Corrections, 2004 WL 2979910, *11 (S.D.N.Y. 2004) ("I conclude that section 1997e(a) is the sort of 'statutory prohibition' on the commencement of an action that gives rise to tolling under CPLR §204(a)."); Allaway v. McGinnis, 362 F. Supp. 2d 390, 393-394 (W.D.N.Y. 2005) (Larimer, J.) (after the initial suit was dismissed for failure to exhaust administrative remedies, the plaintiff exhausted his administrative remedies and filed a second suit.  The court declined to

dismiss the second suit on statute of limitations grounds, finding that CPLR §205(a) tolls the statute of limitations during the pendency of an action that has been terminated for failure to exhaust administrative remedies.). *See also* <u>Petrucelli</u>, <u>supra</u>, 605 F.Supp.2d at 418-419 (finding that the exhaustion of administrative remedies tolls the statute of limitations in a <u>Bivens</u> suit); <u>Hayes v. N.Y.S. D.O.C. Officers</u>, 1998 WL 901730, *6 (S.D.N.Y. 1998) ("Had plaintiff pursued his administrative remedies after the effective date of the PLRA, when doing so became mandatory, there would be no question that the statute of limitations would have been tolled during the pendency of those proceedings.").

Even considering the contrary authority from this Circuit (*see*, *e.g.*, <u>Thomas v. Henry</u>, 2002 WL 922388, *2 (S.D.N.Y. 2002) ("The statute of limitations is three years for §1983 claims arising in New York. . . . And 'the pendency of a grievance . . . does not toll the running of the limitations periods.' <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 261, 101 S.Ct. 498, 506 (1980) (Title VII and § 1981 claims)."), "'draw[ing] all reasonable inferences in the plaintiff's favor,' . . . it appears that dismissal of the plaintiff's § 1983 deliberate indifference claim as untimely would be improper." <u>Anderson v. Romano</u>, 2009 WL 602965, *4 (S.D.N.Y. 2009) (<u>quoting</u> <u>Iqbal v. Hasty</u>, 490 F. 3d 143, 152 (2d Cir. 2007), <u>reversed</u>, <u>Ashcroft v. Iqbal</u>, <u>supra</u>) ("It is not entirely clear whether the statute of limitations for a civil rights claim by an incarcerated inmate is tolled while an inmate exhausts his administrative remedies by filing an inmate grievance(s).").

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The particulars of what remedies were available to plaintiff-and thus required to be exhausted-in this case must be determined vis-a-vis the procedures existing in 2005, when the alleged incident occurred." Land v. Kaufman, 2009 WL 1106780, *1 (S.D.N.Y. 2009). "At that time, DOCS maintained a three-step inmate grievance program. N.Y. Correct. Law §139; N.Y. Comp.Codes R & Regs. tit. 7, §701.1-701.16 (2005). . . . Step one required an inmate to file a grievance with the inmate grievance resolution committee ('IGRC') within fourteen days of the alleged incident. N.Y. Comp.Codes R & Regs. tit. 7, §701.7(a)(1). The IGRC was charged with resolving the grievance within seven working days of receipt and communicating its decision to the grievant within two days thereafter. Id. §701.7(4). Step two gave an inmate four days to appeal the IGRC's decision to the facility superintendent, who had five to ten days to act upon it, depending on the type of grievance. Id. §701.7(b). Third and finally, an inmate had four days to appeal the superintendent's decision to the central office review committee ('CORC'), which in turn had twenty days to respond. Id. §701.7(c). If at any stage, an inmate did not receive a timely response from the relevant DOCS entity, he was entitled to proceed directly to the next step. Id. §701.8." Id.[2]

As discussed earlier, plaintiff's first cause of action alleging that defendant Timothy Benson assaulted him and used excessive force accrued on September 12, 2005.

---

[2] "DOCS continues to maintain this three-step program; however, the details changed with various amendments made to the regulations effective June 2006. *See* N.Y. Comp.Codes R & Regs. tit 7, §§ 701.1-701.11 (2009)". Land, supra, 2009 WL 1106780 at *1 n. 3.

Plaintiff filed a grievance complaint regarding this incident on September 24, 2005. Complaint [1], Ex. C. On November 17, 2005, the Inmate Grievance Program Superintendent found that plaintiff's evidence "does not substantiate a grievance of harassment" Id. at Ex. D. On October 20, 2005 plaintiff filed an appeal to CORC. Id. However, according to plaintiff's complaint, he never received a decision on his appeal to CORC. Complaint [1], p. 5.

Accepting plaintiff's allegations as true, as I must on a motion to dismiss, I cannot conclude on the record before me that plaintiff's complaint is barred by the statute of limitations. Although plaintiff did not receive a determination from CORC regarding his appeal, he is not deemed to have exhausted his appeal until a decision is received. *See* Torres v. Carry, 2009 WL 2591507, *4 (S.D.N.Y. 2009) ("Even if the Court were to accept Torres's representation that he properly appealed to the CORC, that appeal by itself does not exhaust his available administrative remedies." citing Partee v. Grood, 2007 WL 2164529,*3 (S.D.N.Y. 2007) ("an inmate/plaintiff's claim is not exhausted until he appeals to the CORC and receives a final decision regarding his grievance"). Therefore, on the record before me, plaintiff's excessive force claim remained tolled at least through November 25, 2005, and the statute of limitations did not expire before the commencement of this suit.

"DOCS . . . has a separate and distinct administrative appeal process for inmate misbehavior hearings. . . . For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. §254.8". Taylor v. Artus, 2007 WL 4555932, *6 (N.D.N.Y. 2007).

Plaintiff's second cause of action arising from the due process violations at his disciplinary hearing accrued on October 18, 2005, when Captain Kearney issued his decision. This claim remained tolled until December 7, 2005, when plaintiff's appeal of the Superintendent's Hearing was affirmed. Complaint [1], Ex. A.[3] Having commenced this action on November 25, 2008, plaintiff's due process claims are timely.

Therefore, I recommend that this aspect of defendants' motion be denied.

## C.  Has Plaintiff Sufficiently Alleged a Protected Liberty Interest to Support his Due Process Claims Against Defendants Kearney and Selsky?

Defendants seek to dismiss the due process claims against defendants Kearney and Selsky[4] because plaintiff "cannot manufacture a liberty interest by alleging that he suffered the loss of privileges as part of his SHU term".  Defendants' Memorandum of Law, p. 5.

The threshold issue on any of procedural due process claim involving an inmate "is always whether the plaintiff has a property or liberty interest protected by the Constitution".  Narumanchi v. The Board of Trustees of the Connecticut State University, 850 F. 2d 70, 72 (2d Cir. 1988). "An inmate has a protected liberty interest in not being confined only if 'the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation.' " Durran v. Selsky, 251 F. Supp. 2d 1208, 1214 (W.D.N.Y.2003) (Larimer, J.). "Although determining whether a particular confinement 'imposes [an] atypical and significant

_____

[3]     While plaintiff argues that he did not receive the denial of his administrative appeal until January 2006, this is irrelevant because under either scenario, the claim is not time-barred.  Plaintiff's Opposition [15], p. 6.

[4]     Defendants argue that the claims against defendant Selsky should be dismissed because his liability is derivative of defendant Kearney's. Defendants' Memorandum of Law [5], p. 8.

hardship on the inmate in relation to the ordinary incidents of prison life' . . . will involve factual determinations . . . 'the ultimate issue of atypicality is one of law.' Among the factors to be considered are '(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement.' " Id.

Because there is no bright-line test, I must "examine the conditions of confinement 'in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.'" Davis v. Barrett, 576 F. 3d 129, 134 (2d Cir. 2009).

Plaintiff's complaint alleges that "defendants [sic] actions, assaulting, confining plaintiff, taken privileges, etc, for 180 days, . . . caused plaintiff 'atypical significant hardship to such an extent, that he was not functioning normal, causing depression, emotional depression, mental anguish, to such extent. That on or about November 2005, plaintiff . . . took approximately 65-67 - pills, in an attempt to commit suicide." Complaint [1], p. 19, ¶30. He also alleges that the conditions in SHU "are more severe than, general confinement, which created 'atypical significant hardship' on plaintiff: The conditions were very bad: cold, bugs, mice, dirty, etc." Id. at p. 17, ¶27.

Faced with plaintiff's allegations, which I must accept as true for purposes of this motion, I find that he has sufficiently alleged at this stage a protected liberty interest. *See* Ortiz v. McBride, 380 F. 3d 649, 655 (2d Cir. 2004) ("based on these and Ortiz's other allegations

relating to his treatment in SHU, we think that, if proved, they could establish conditions in SHU

'far inferior,' to those prevailing in the prison in general. We thus conclude that Ortiz has alleged

that the ninety-day SHU sentence imposed on him was, under the circumstances, a hardship

sufficiently 'atypical and significant' to withstand a Rule 12(b)(6) motion as to the first part of

the due process test."). Therefore, I recommend that this aspect of defendants' motion be denied.


**D.      Do Plaintiff's Claims Against Defendant Selsky State a Due Process Violation?**

     Alternatively, defendants argue that plaintiff's claim against Selsky fails on its

face because "administrative review is not one of the protections required by Wolff v.

McDonnell, 418 U.S. 539 (1974)."    Plaintiff's claim against defendant Selsky appears to arise

from defendant Selsky's failure to remedy the due process violations committed by defendant

Kearney:  "Selsky . . . affirmed plaintiff's appeal, where he raised all of the due process

violations . . . and plaintiff submitted numerous case law supporting that his due process rights

were violated at said hearing".  Complaint [1], p. 14.

     Defendants are correct that "decisions affirming or modifying the results of the

disciplinary hearings do not, *standing alone*, establish a federal constitutional violation." Chavis

v. vonHagn, 2009 WL 236060, *68 (W.D.N.Y. 2009) (Schroeder, M.J.) (emphasis added) (citing

Hameed v. Mann, 57 F.3d 217, 224 (2d Cir.1995)). However, defendant Selsky may still be

found to have been personally involved in the *underlying* constitutional violation.  "A

supervisory official is liable for constitutional violations if he or she (1) directly participated in

the violation; (2) *failed to remedy the violation after learning of it through a report or appeal*;

(3) created a custom or policy fostering the violation or allowed the custom or policy to continue

after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation." <u>Sealey v. Giltner</u>, 116 F. 3d 47, 51 (2d Cir. 1997) (emphasis added).

Having failed to challenge Selsky's personal involvement in Kearney's underlying alleged due process violations, defendants' motion must fail. *See* <u>Hamilton v. Smith</u>, 2009 WL 3199531, *22 (N.D.N.Y. 2009), <u>report and recommendation adopted as modified</u>, 2009 WL 3199520 ("while personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results."); <u>Odom v. Calero</u>, 2008 WL 2735868, *7 (S.D.N.Y. 2008) ("Once the hearing was over and her decision was issued, the due process violation was completed. The only opportunity that Fischer or Selsky had to rectify this violation was through the appeal process itself. The only method outlined by the Second Circuit by which personal involvement may be shown potentially relevant here is that Fischer and Selsky, 'after being informed of the violation through [the appeals], failed to remedy the wrong.'").[5]   Therefore, I recommend that this aspect of defendants' motion be denied.


E.      **Are Plaintiff's Official Capacity Claims Barred by the Eleventh Amendment?**

Defendants argue that the Eleventh Amendment bars plaintiff's damage claims against defendants in their official capacities. Defendants' Memorandum of Law [5], p. 9. Plaintiff does not appear to directly oppose this aspect of defendants' motion, and rightfully so.

---

[5]      *Compare with* <u>Gates v. Selsky</u>, 2005 WL 2136914, *10 (W.D.N.Y. 2005), <u>reconsideration granted on other grounds</u>, 2005 WL 3132725 (W.D.N.Y. 2005) (Scott, M.J.) ("As for defendant Selsky, plaintiff does not have a due process right to an administrative appeal or to a particular result in such an appeal. Therefore, plaintiff's due process claims against . . . Selsky also fails").

"The claims against Defendants in their official capacities are barred by the Eleventh Amendment and must be dismissed . . . . The Eleventh Amendment renders states immune from suit in federal court and this immunity extends to state agencies, state branches of government, and other arms of the state . . . . DOCS, as a state agency, enjoys Eleventh Amendment immunity from suit in federal court . . . . Claims against state officials in their official capacities are considered claims against the state and are therefore barred by the Eleventh Amendment." Abascal v. Fleckenstein, 2008 WL 3286353, *10 (W.D.N.Y. 2008) (Skretny, J.). Therefore, I recommend that the plaintiff's official capacity claims be dismissed.

## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss [4] be GRANTED in part and DENIED in part as set forth herein. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:      December 7, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge