UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JACK VIGLIOTTI,

                                  Plaintiff,

v.

DIRECTOR DONALD SELSKY, et al.,

                                  Defendants.

_____

**DECISION AND ORDER**

08-CV-00875(M)

        The parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. §636(c) [29].[1]  Before me is plaintiff Jack Vigliotti's motion to compel [103]. For the following reasons, plaintiff's motion is granted in part and denied in part.

**BACKGROUND**

        Plaintiff commenced this action *pro se* on November 25, 2008 pursuant to 42 U.S.C. §1983, alleging that on September 12, 2005, while he was incarcerated at the Wende Correctional Facility ("Wende"), he was assaulted by defendant Correctional Officer Timothy Benson.  Complaint [1], First Cause of Action.  Plaintiff further alleges that certain due process violations occurred at his disciplinary hearing, which was conducted by defendant Captain Martin Kearney, arising from the incident.  Id., Second Cause of Action.  On October 18, 2005 Captain Kearney found plaintiff guilty of some of the charges against him and sentenced him to 180 days of confinement in the Special Housing Unit ("SHU") and 180 days loss of packages, television, commissary, and telephone.  Id. at ¶21, p. 11.  On December 7, 2005, defendant

---

[1]     Bracketed references are to the CM/ECF docket entries.

Donald Selsky, the Director of Special Housing, denied plaintiff's appeal and affirmed Captain Kearney's determination. Id. at ¶24, p.14.

Plaintiff argues that during the six months of SHU confinement he was transferred from Wende to Upstate Correctional Facility ("Upstate"). While in transit to Upstate, he was temporarily incarcerated at Auburn Correctional Facility ("Auburn"), where he attempted to commit suicide. Plaintiff's Memorandum of Law [130-5], pp. 4-5. When he returned to Auburn from the hospital, he was placed in a mental health cell where he was given only "a flimsy smock and a thin mat" Id. at p. 5. At Upstate he was again placed in a mental health cell until he was transferred to a mental health observation cell at Clinton Correctional Facility ("Clinton") with similar conditions. Id.

While plaintiff was proceeding *pro se*, he moved to compel certain discovery [34, 45]. While these motions were pending, I appointed Patrick McCarthy, Esq. to represent plaintiff [48]. The parties then advised me that all aspects of plaintiff's motion to compel, other than those seeking defendant Correction Officer Timothy Benson's medical records, were resolved by the parties [53]. I then granted plaintiff's motion for Benson's medical records in part and denied it in part. July 19, 2011 Decision and Order [55].

On October 13, 2011, I issued a Second Amended Case Management Order [67] requiring the completion of pretrial discovery by March 30, 2012. Id., ¶1. In January of 2012, Patrick Curran, Esq. was substituted for Mr. McCarthy as plaintiff's counsel [76]. Shortly thereafter, a Third Amended Case Management Order [79] was issued requiring the completion of pretrial discovery by April 30, 2012. Id., ¶1. That deadline was then extended four additional

times ([84], [89], [92], [96]) resulting in the February 15, 2013 pretrial discovery deadline set forth my Seventh Amended Case Management Order ([99]).

One week before this deadline, plaintiff requested a conference to discuss his outstanding discovery requests. A conference was held on February 15, 2013, and at that time, I directed plaintiff to file a motion to compel by March 1, 2013, and indicated that "[i]t shall include an explanation of why this issue was not raised until shortly before the discovery deadline". February 15, 2013 Minute Entry and Order [102]. This motion ensued, which seeks to compel production of certain discovery within 30 days, or in the alternative, to preclude defendants from "presenting any evidence of their claim at that time of trial." Notice of Motion [103]. Plaintiff also seeks costs. Curran Affidavit [103], Wherefore Clause.

## ANALYSIS

"Courts have wide discretion to manage discovery." Smith v. Haag, 2009 WL 3073976,*3 (W.D.N.Y. 2009) (Payson, M. J.). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense". Fed. R. Civ. P. ("Rule") 26(b)(1). "[A]ctions alleging violations of §1983 require especially generous discovery." Cox v. McClellan, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) (Feldman, M.J.).

With this standard in mind, I will address plaintiff's motion, which identifies the following fourteen items of discovery he is seeking:

> "a)   Misbehavior Reports/Unusual Incident Reports concerning our client's attempted suicide and barricading himself in his cell November 5, 2005;

b) Any tickets issued to Mr. Vigliotti and attachments or reports or follow-up documentation associated with them or with the alleged incident(s) that is the subject of any such ticket for the years of his incarceration;

c) All documents identifying Corrections Officers who escorted Mr. Vigliotti and other inmates from Nine Company, B-Block at the Wende Correctional Facility, to and from dinner on September 12, 2005;

d) Disciplinary hearing documents, including review of the hearing and the appeal letter;

e) Documentation, reports and files maintained in the office of defendant Donald Selsky concerning the review process for the appeal filed by plaintiff regarding the incident on September 12, 2005;

f) Exemplar of the mat and the gown or smock which plaintiff had to wear when confined in special housing unit or in the psychiatric facility;

g) A copy of the Hearing Officer's Manual, Policy or Procedures regarding conduct of the disciplinary hearings and the materials created by the Attorney General's office and any other documents that guided the review of appeals by Mr. Selsky's staff in 2005;

h) Department of Correctional Services directives or other documents regarding pat frisk which were in effect on September 12, 2005;

i) A copy of the Hearing Officer's Manual and Policies and Procedures regarding hearing officers who conduct disciplinary hearings;

j) Timecards or other documentation showing the hours worked by defendant Correction Officer Timothy Benson on September 12, 2005 through September 30, 2005;

k) Documentation regarding grievances and complaints filed by inmates against defendant Corrections Officer Timothy Benson prior to September 12, 2005;

| | |
|---|---|
| l) | Documentation regarding number of incidents wherein defendant Corrections Officer Timothy Benson and Corrections Officer Glen Krathaus were involved in altercations with inmates including Use of Force Reports, prior to September 12, 2005; |
| m) | Documents relating to the suspensions of Corrections Officer Glen Krathaus while employed at the Greenhaven Correctional Facility on or about 1995 including Misbehavior Reports, Use of Force Reports, 'To From' memoranda and other documents relating to the disciplinary action against Officer Krathaus including suspension without pay. |
| n) | A print out indicating the number of grievances filed by inmates regarding the conditions of confinement at Auburn Correctional Facility, D-Block, Eight Company, mental health units during the two years preceding September 12, 2005 as well as grievance complaints filed by inmates with respect to the conditions of confinement at Clinton Correctional Facility, mental health unit and E-Bloc, One Company, during the two years preceding September 12, 2005." Curran Affidavit [103], ¶¶2(a)-(n). |

In addition to these fourteen items of discovery, he also seeks to compel inspections of Auburn, Clinton, and Upstate, including the right to obtain photographs and video images of those areas where plaintiff was confined. Id., ¶3.

**Document Demands**

Many of defendants' responses to these requests fall into three general categories: 1) the requested items were previously produced (items (a) and (d));  2) the requested items were previously requested informally, rather than by proper demands (items (e), (g) (Hearing Officer

Manual and materials created by the Attorney General's Office),[2] and (i) (Hearing Office Manual)); and 3) this discovery is being requested for the first time in plaintiff's motion (items (c), (g) (policies and procedures for review of appeals), (h), (i) (policies and procedures for disciplinary hearings), (j), (k), (l), (m), and (n)). Sleight Declaration [107], ¶¶8(a)-(n). I agree with defendants, and deny these aspects of plaintiff's motion.

        Since defendants' counsel represents that he has produced documents responsive to items a and d and identified these documents by Bates number, I see no basis to compel these items. *See* Sleight Declaration [107], ¶8(a), (d). While it appears that plaintiff may have requested many documents informally, such requests are not enforceable absent a formal demand. "The Federal Rules of Civil Procedure provide necessary boundaries and requirements for formal discovery. Parties must comply with such requirements in order to resort to the provisions of Fed.R.Civ.P. 37, governing motions to compel. Informal requests for production lie outside the boundaries of the discovery rules." Continental Casualty Co. v. Multiservice Corp., 2008 WL 73345, *8 (D.Kan. 2008). *See* Patel ex rel. R.P. v. Menard, Inc., 2011 WL 5024991, *3 n.2 (S.D.Ind. 2011) ("informal discovery requests are just that— *informal*" (emphasis in original)); Harding v. Town of Greenwich, 2010 WL 4681250, *2 (D.Conn. 2010) ("The defendant's motion to compel responses to these informal requests is denied"). Even plaintiff's counsel appears to have recognized his obligation to do so by acknowledging at the deposition of defendant Selsky that he would be making formal written demands for the discovery he was requesting, which does not appear to have occurred. *See* Curran Affidavit [103], Ex. A, p. 21 ("I

---

[2]    Defendants' counsel states that notwithstanding his objections, he will produce the Hearing Officer Manual to plaintiff. Sleight Declaration [107], ¶8(g).

will make a formal written demand . . . for that document"). There is also nothing in the record before me that establishes that plaintiff had previously requested items (c), (h), (i) (policies and procedures), (j), (k), (l), (m), and (n). While plaintiff alleges that his "demands have been raised by [him] while proceeding *pro se*, as well as by his prior attorney . . . in a discovery demand dated December 20, 2011" (Curran Affidavit [103], ¶7), these demands are not attached or cited in plaintiff's motion.

In response to plaintiff's request for "tickets" (item b), defendants respond that this term is slang for a misbehavior report. They oppose this request, which they allege was raised for the first time in correspondence on December 10, 2012, as being overly broad and irrelevant. I agree with defendants. "The burden of demonstrating relevance is on the party seeking discovery." Lent v. Signature Truck Systems, Inc., 2010 WL 1707998, *2 (W.D.N.Y.2010) (Scott, M.J.). Plaintiff makes no attempt to explain why misbehavior reports (other than for the those related to the incident) are relevant. Additionally, this request appears to have been made informally. Therefore, this aspect of plaintiff's motion is denied.

**Inspection and Production of Exemplars**

In a "Request for Entry onto Premises and Request for Samples Pursuant to Rule 34" dated May 11, 2012, plaintiff sought inspection of Wende, Auburn and Clinton Correctional Facilities, and for production of a "sample" of the "mat" and "smock" provided to inmates at Auburn's Mental Health Unit. Curran Affidavit [103], Ex. C.[3] While defendants permitted an

---

[3] In addition to the inspections set forth in his May 11, 2012 request, plaintiff's motion seeks to compel an inspection of Upstate. Plaintiff's Memorandum of Law [103-5], p. 6.

inspection of Wende, they objected on May 17, 2012 to plaintiff's request to inspect the other facilities and for production of the smock and mat since "[t]he complaint does not assert a cause of action . . . alleging that Plaintiff's conditions of confinement in SHU or DOCCS suicide watch procedures caused Eighth Amendment or other Constitutional violations."  Curran Affidavit [103], Ex. D.  Plaintiff responds that these inspections and production of the mat and smock are relevant to "establish[ing] his damages . . . and that he sustained an Atypical and Significant Hardship".  Plaintiff's Memorandum of Law [130-5], p. 6.  I agree with plaintiff.

        The threshold issue on any procedural due process claim involving an inmate "is always whether the plaintiff has a property or liberty interest protected by the Constitution".  Narumanchi v. The Board of Trustees of the Connecticut State University, 850 F.2d 70, 72 (2d Cir.1988).  "[A] prisoner has a liberty interest only if the deprivation is atypical and significant and the state has created the liberty interest by statute or regulation".  Tellier v. Fields, 280 F.3d 69, 80 (2d Cir. 2000).  "[D]etermining whether a particular confinement 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' . . . will involve factual determinations".  Durran v. Selsky, 251 F.Supp.2d 1208, 1214 (W.D.N.Y.2003) (Larimer, J.) (*quoting* Sandin v. Conner, 515 U.S. 472, 484 (1995)).

        Although defendants now oppose plaintiff's motion on the grounds that the facilities are in the possession, custody and control of DOCCS, a non-party, this objection was not raised in response to plaintiff's request for inspection and ignores the fact that defendants apparently had sufficient nexus to DOCCS to arrange for the inspection of Wende.  *See* Curran Affidavit [103], Ex. D.

My only reservation about granting this aspect of plaintiff's motion is its timing. *See* United States v. $50,800.00 in U.S. Currency, 2011 WL 5024260, *1 (D.Ariz. 2011) ("Untimely-filed discovery motions are disfavored, especially when a plaintiff, as Plaintiff did here, waited to the very last day to file a discovery motion, knowing for several months that Claimant's discovery responses would not be forthcoming").  Having been aware of defendants' objections to his request for inspection since May 17, 2012, I question why plaintiff waited until the eve of the discovery cutoff to raise this issue.  Notwithstanding my direction that plaintiff's motion "shall include an explanation of why this issue was not raised until shortly before the discovery deadline" (February 15, 2013 Minute Entry and Order [102]), his motion offers little, if any, explanation as to why this occurred.  Nevertheless, defendants make no claim of prejudice arising from the timing of plaintiff's motion.  Therefore, I will permit the remaining inspections and production specified in his May 11, 2012 request to occur, but require that this discovery be completed within the next 30 days to limit the delay.

Although I have granted a portion of plaintiff's motion, I find no basis to sanction defendants by preclusion of evidence or an award of costs.

## CONCLUSION

For these reasons, plaintiff's motion to compel [103] is granted to the extent it seeks to compel the remaining discovery and inspections identified in his May 11, 2012 Request for Entry onto Premises and Request for Samples Pursuant to Rule 34 (Curran Affidavit [103], Ex. C), but is otherwise denied.  This remaining discovery shall be completed by August 31, 2013.

Other than the discovery I have permitted herein, I consider discovery in this case to be concluded. The parties may agree among themselves to conduct further discovery, but such discovery will not be subject to court compulsion. A conference to set a deadline for dispositive motions is set for September 3, 2013 at 9:00 A.M.

**SO ORDERED.**

Dated: July 3, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge