UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACK VIGLIOTTI,

                      Plaintiff,

v.

DIRECTOR DONALD SELSKY, et al.,

                      Defendants.
_____

**DECISION AND ORDER**

08-CV-00875-JJM

      The parties have consented to proceed before a Magistrate Judge pursuant to 28

U.S.C. §636(c) [29].[1]  Before me are the parties' cross-motions for partial summary judgment

[123, 131].  Oral argument was held on February 14, 2014 [147].  For the following reasons,

defendants' motion is granted in part and denied in part, and plaintiff's motion is denied.


## BACKGROUND

      Plaintiff commenced this action *pro se* on November 25, 2008 pursuant to 42

U.S.C. §1983, alleging that on September 12, 2005, while he was incarcerated at the Wende

Correctional Facility, he was assaulted by defendant Correctional Officer Timothy Benson.

Complaint [1], First Cause of Action.  Plaintiff further alleges that certain due process violations

occurred at his disciplinary hearing arising from the incident, which was conducted by defendant

Captain Martin Kearney.  Id., Second Cause of Action.  On October 18, 2005 defendant Kearney

found plaintiff guilty of some of the charges against him and sentenced him to 180 days of

confinement in the Special Housing Unit ("SHU") and 180 days loss of packages, television,

commissary, and telephone.  Id. at ¶21, p. 11.  On December 7, 2005, defendant Donald Selsky,

_____

[1]      Bracketed references are to the CM/ECF docket entries.

the Director of Special Housing, denied plaintiff's appeal and affirmed  defendant Kearney's

determination.  Id. at ¶24, p.14.

The parties cross-move for partial summary judgment on the Second and Third

Causes of Action alleging due process violations against  defendants Kearney and Selsky.


**ANALYSIS**

**A.      Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is

well settled.  "Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  The party seeking summary judgment has the burden to demonstrate that no genuine issue

of material fact exists.  In determining whether a genuine issue of material fact exists, a court

must examine the evidence in the light most favorable to, and draw all inferences in favor of, the

non-movant.  Summary judgment is improper if there is any evidence in the record that could

reasonably support a jury's verdict for the non-moving party."  Ford v. Reynolds, 316 F.3d 351,

354 (2d Cir. 2003).


**B.      Due Process Standard**

"Prison disciplinary proceedings are not part of a criminal prosecution, and the

full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell,

418 U.S. 539, 556 (1974).  Nevertheless, inmates are "entitled to certain procedural protections

when disciplinary actions subject them to further liberty deprivations such as . . . special

confinement that imposes an atypical hardship".  Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004).[2]

These protections include "advance written notice of the charges against him; a hearing affording

him a reasonable opportunity to call witnesses and present documentary evidence; a fair and

impartial hearing officer; and a written statement of the disposition, including the evidence relied

upon and the reasons for the disciplinary actions taken".  Id. (citing Wolff, 418 U.S. at 563-67).

"In addition, due process requires that there be some evidence to support the findings made in the

disciplinary hearing."  Washington v. Gonyea, 538 Fed.Appx. 23, 25 (2d Cir. 2013) (Summary

Order).  See Luna v. Pico, 356 F.3d 481, 491 (2d Cir. 2004) (interpreting the "some evidence"

standard to require "reliable evidence").

   "[R]egardless of state procedural guarantees, the only process due an inmate is

that minimal process guaranteed by the Constitution, as outlined in Wolff".  Shakur v. Selsky,

391 F.3d 106, 119 (2d Cir. 2004). Therefore,  violations of "state regulations during [a]

disciplinary hearing do not give rise to a §1983 due process claim".  Austin v. Fischer, 453

Fed.Appx. 80, 83 (2d Cir. 2011) (Summary Order).  See also Russell v. Coughlin, 910 F.2d 75,

78 (2d Cir. 1990) ("Federal constitutional standards rather than state law define the requirements

of procedural due process").

   "[P]rison disciplinary hearings are subject to a harmless error analysis." Tafari v.

Rock,  2012 WL 1340799, *5  (W.D.N.Y. 2012) (Telesca, J.) (citing Powell v. Coughlin, 953

F.2d 744, 750 (2d Cir.1991)).  Thus, "to establish a procedural due process claim in connection

---

[2] Neither party has moved for summary judgment on the issue of whether plaintiff's six
months of confinement in the Special Housing constitutes an atypical and significant hardship under
Sandin v. Conner, 515 U.S. 472 (1995).

with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." Eleby v. Selsky, 682 F.Supp.2d 289, 292 (W.D.N.Y. 2010) (Larimer, J.).

With this standard in mind, I will address each of the alleged deficiencies raised by plaintiff.


**C.     Inadequate Assistance**

Plaintiff was assigned an Inmate Assistant, Angelo Amato, to prepare for his disciplinary hearing.  Defendants' Statement of Undisputed Facts [124], ¶8.  He alleges that Amato failed to provide him with adequate assistance, in violation of his due process rights, by not contacting witnesses and by not providing him with certain documentation.  Plaintiff's Memorandum of Law [134], pp. 4-5.

"Prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir.1988).  However, since Amato is not named as a defendant, it is unnecessary for me to determine whether he provided plaintiff with adequate assistance. *See* Sowell v. Weed, 2013 WL 3324049, *13 (W.D.N.Y. 2013) (Telesca, J.) ("Sowell's claim founders . . . because he has failed to sue either of his legal assistants").  Therefore, this claim is dismissed.

**D.      Defendant Kearney**

**1.      Delay in Completing the Disciplinary Hearing**

Plaintiff alleges a due process violation arising from the failure of defendant

Kearney to complete the hearing within 14 days as the New York State Department of

Corrections and Community Supervision  regulations require (7 NYCRR §251  5.1(b)).

Defendants argue that this claim must be dismissed since "a violation of a state . . . regulation, in

and of itself, does not give rise to liability under §1983".  Defendants' Memorandum of Law

[125], p. 6.  I agree with defendants.  *See* Nimmons v. Fischer, 2013 WL 4495006, *4, 10

(W.D.N.Y. 2013) (Arcara, J./Foschio, M.J.) (dismissing claim that a disciplinary hearing was not

completed within 14 days).  Therefore, this claim is dismissed.


**2.      Notice**

Plaintiff alleges that he was not provided with adequate notice that Correction

Officer Glen Krathaus was going to be called as a witness.  Plaintiff's Memorandum of Law

[134], pp. 5-6.  Due process requires advance written notice of the claimed violation in order "to

give the charged party a chance to marshal the facts in his defense and to clarify what the charges

are".  Wolff, 418 U.S. at 564.

However, plaintiff cites no authority suggesting that due process requires advance

notice of the witnesses a hearing officer may call.  In any event, since Krathaus was a participant

in the incident and a co-signator to the Misbehavior Report ([124-1], Bates No. 000189), it

should not have been a surprise to plaintiff that he would be called as a witness.  Moreover,

when plaintiff indicated that he was not prepared to question Krathaus, defendant Kearney

advised plaintiff to "[t]ake [his] time" before he proceeded with his questioning (id., Bates No.

000060).  Therefore, this claim is dismissed.


**3.      Opportunity to Present a Defense**

Plaintiff claims that he was denied documentary evidence, was precluded from

questioning defendant Benson in a meaningful way, and not permitted to be present for the

questioning of his inmate witnesses.  Plaintiff's Memorandum of Law [134], pp. 6-10.  An

"inmate facing disciplinary proceedings should be allowed to call witnesses and present

documentary evidence in his defense when permitting him to do so will not be unduly hazardous

to institutional safety or correctional goals".  Wolff, 418 U.S. at 566.  However, "a hearing

officer does not violate due process by excluding irrelevant or unnecessary testimony".

Kalwasinski v. Morse, 201 F.3d 103, 109 (2d. Cir. 1999).[3]


**a.      Denial of Documentary Evidence**

Plaintiff points to three pieces of documentary evidence which were denied to

him.  First, he alleges that he was denied the Final Unusual Incident Report (plaintiff's

---

[3]      *Compare with* Amaker v. Coombe,  2002 WL 523388, *10  (S.D.N.Y. 2002) ("[A]n inmate's right to present documentary evidence in his defense does not entail an obligation on the part of prison officials to retrieve every document that an inmate requests for his case [,] [e]ven when documents are relevant and obtainable").

Counterstatement of Facts [133], ¶1),[4] which would have alerted him that defendant Kearney was the reporting officer and permitted him to challenge directly with defendant Kearney whether this was a basis for his recusal.  [131-3], Bates No. 000243. The Final Unusual Incident Report also contained a number of  relevant documents.  As defendant Kearney testified, the preliminary version of the report was  "only two sheets", whereas the final version "consists of all documentation related to the incident, medical reports, use of force reports, and all employee names and any witnesses".  Kearney's deposition transcript [131-2],  p. 25.

Second, plaintiff points to defendant Kearney's denial of his request for defendant Benson's injury report.  Defendant Kearney summarily denied  this request, stating only "That's something that's not done".  Even when plaintiff offered him case law in support of his entitlement to that information, he stated -  "I do not do case law. OK?"  Hearing transcript [124-2], Bates Nos. 000015-16.

Due process requires more.  "Although [the right to documentary evidence] can give way to legitimate concerns over institutional safety . . . an inmate is still entitled to *some* explanation of the basis for a hearing officer's denial of the inmate's request for . . . items of evidence." Loret v. Selsky, 595 F.Supp.2d 231, 234 (W.D.N.Y. 2009) (Larimer, J.) (emphasis in original).  *See* Collins v. Ferguson,  804 F.Supp.2d 134, 139 (W.D.N.Y. 2011) (Larimer, J.)

---

[4]	Defendants allege that the Unusual Incident Report was finalized on September 20, 2005, and a copy was provided to plaintiff some time before the conclusion of the hearing.  Defendants' Reply Memorandum of Law [144], p. 5 of 15 (*citing* Kearney's deposition transcript [145], pp. 30-31). However, it is not clear from the transcript of the disciplinary hearing whether the Final Unusual Incident Report was provided to plaintiff.   In fact, plaintiff alleges that even in discovery he  has never been provided with the Final Unusual Incident Report, thereby leaving him to attempt to reconstruct what would have been contained in that report from defendant Kearney's testimony. Curran Affidavit [131-1], ¶4.

("prison officials may be required to explain, in a limited manner, the reason . . . why requested evidence was excluded or denied" *quoting* <u>Ponte v. Real</u>, 471 U.S. 491, 497 (1985)).

Lastly, plaintiff also requested the logbook to establish that defendant Benson was not located where he was stationed at the time of the alleged assault.  Hearing transcript [124-2], Bates No. 000015.  However, the hearing transcript does not indicate that this was ever provided to plaintiff, and it is not clear from the transcript what justification, if any,  defendant Kearney would have for withholding this information from plaintiff.

Defendants argue that even if these materials were not provided to plaintiff, he has not established that he was prejudiced by the denial of this information.  Defendants' Reply Memorandum of Law [144], pp. 2-6 of 15.  However, the documents plaintiff was allegedly deprived of were plainly relevant, and what use he may have made of those documents in defending against the charges cannot be resolved as a matter of law.   Therefore, this claim must be resolved by the jury.

### b.  Opportunity to Meaningfully Question Defendant Benson and to be Present for the Questioning of the Inmate Witnesses

Plaintiff argues that he was denied a meaningful opportunity to question defendant Benson and was not permitted to be present for the questioning of his  inmate witnesses.  However, "it is well settled that  an inmate does not possess a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings".  <u>Fernandez v. Callens</u>, 2010 WL 4320362, *11 (W.D.N.Y. 2010) (Schroeder, M.J.) (*citing* <u>Wolff</u>, 418 U.S. at 567  68).  *See also* <u>Silva v. Casey</u>, 992 F.2d 20, 22 (2d. Cir. 1993) ("an inmate has no constitutional right of

confrontation"); <u>Sowell</u>, 2013 WL 3324049 at *10 ("As a matter of federal constitutional law, an inmate does not have a right to cross-examine adverse witnesses at a disciplinary hearing")[5]; <u>Toliver v. New York City Department of Corrections</u>, 2013 WL 3779125, *10-11 (S.D.N.Y. 2013) ("Mr. Toliver also claims that he was denied his right to call the officers, who had issued him [the infraction], to testify at the hearing.  However, due process protection does not provide inmates right to confront and cross-examine those furnishing evidence against the inmate").  It is also "not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate".  <u>Kalwasinski</u>, 201 F.3d at 109; <u>Francis v. Coughlin</u>, 891 F.2d 43, 48 (2d Cir. 1989) ("Prison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding")[6]; <u>LeBron v. Artus</u>, 2008 WL 111194, *10  (W.D.N.Y. 2008) (Bianchini, M.J.) ("Due process is not violated when the hearing officer decides to take the testimony of a witness outside the presence of an inmate"). *See also* <u>Bogle v. Murphy</u>, 2003 WL 22384792, *7  (W.D.N.Y. 2003) (Siragusa, J.) ("[A]lthough New York regulation section 254.6 explicitly provides inmates a right to be present at their disciplinary proceedings, it does not create a constitutional due process right.  Since, under

---

[5]     Although plaintiff disputes whether his questioning of defendant Benson was cross-examination (plaintiff's Reply Memorandum of Law [146]),  he was plainly an adverse witness.

[6]     *Compare with* <u>Young v. Kihl</u>, 1990 WL 33183, *3 (W.D.N.Y.1990) (Elfvin, J.) (<u>Francis</u> does not  provide  "a rationale for extending the per se rule against the confrontation of adverse witnesses to the realm of the friendly or favorable witness. In this Court's view, absent a justification for a per se rule in the latter circumstances, the balance of interests in each case should be decided on an individualized basis in keeping with the general principle that inmates may enjoy those constitutional rights which are not inconsistent with legitimate penological objectives. Nevertheless, this Court is obliged to follow the appellate court's clear determination").

Wolff, inmates are not afforded a constitutional due process right to be present at their hearings,

plaintiff's ejection during his disciplinary hearing was not a due process violation").[7]

       Plaintiff also argues that he was deprived of the ability to ask follow-up questions

of his inmate witnesses  after he heard the recording of their testimony.  "While inmates do have

the right to question witnesses at their disciplinary hearings, that right is not unlimited and its

contours are under the discretion of prison officials."  Reed v. Wolczyk, 2012 WL 5520714, *10

(N.D.N.Y.), adopted 2012 WL 5520679 (N.D.N.Y. 2012).  Although plaintiff may not have been

permitted to  ask every question he may have wanted, a review of the hearing transcript

demonstrates that defendant Kearney permitted him to extensively question not just his inmate

witnesses, but defendant Benson and Krathaus as well.

       Therefore, this claim is dismissed.

### 4.    Impartial Hearing Officer

       "The degree of impartiality required of prison officials does not rise to the level of

that required of judges generally."  Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996).  In the

prison context, "an impartial decisionmaker is one who, *inter alia*, does not prejudge the

evidence and who cannot say . . .  how he would assess evidence he has not yet seen".  Patterson

v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990).  "Administrators serving as adjudicators are

---

[7]     Plaintiff's reliance on Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992) (plaintiff's Memorandum of Law [134], p. 10) is unavailing.  In Young, the disciplinary hearing was conducted  in the defendant's  absence and the hearing officer had determined that the inmate had forfeited his right to call witnesses.  970 F.2d at 1156.  Those circumstances are distinct from questioning certain witnesses outside the presence of an inmate, but otherwise permitting the inmate to be present during the disciplinary hearing. *See* Vogelfang v. Capra, 889 F.Supp.2d 489, 512-15 (S.D.N.Y. 2012).

presumed to be unbiased." <u>Allen</u>, 100 F.3d at 259. *See* <u>Rodriguez v. Selsky</u>, 2011 WL 1086001,

*11 (N.D.N.Y.), <u>adopted</u> 2011 WL 830639 (N.D.N.Y. 2011) ("Because prison officials serving

as adjudicators enjoy a rebuttable presumption that they are unbiased").[8]

   Plaintiff argues that as the "reporting person" on the Unusual Incident Report,

defendant Kearney was prohibited from acting as the hearing officer.  Plaintiff's Memorandum of

Law [125], pp. 13-14.  However, "the mere involvement of a hearing officer in related

investigations or proceedings does not evidence bias". <u>Phelan v. Hersh</u>, 2011 WL 6031940, *9

(N.D.N.Y.), <u>adopted</u> 2011 WL 6031071 (N.D.N.Y. 2011).  *See* <u>Russell v. Selsky</u>, 35 F.3d 55, 60

(2d Cir. 1994) (rejecting argument that a violation of regulation prohibiting a review officer from

acting as a hearing officer in a case that he has reviewed constitutes a due process violation).

   While defendant Kearney's role as the reporting officer was limited, he testified

that he did not "rubber stamp" the Final Unusual Incident Report  and that he was responsible to

"insure that the report is complete and factual" and that "the facts and the misbehavior report are

all consistent".  Kearney deposition transcript [131-2], pp. 20-21.   The Final Unusual Incident

Report dated September 21, 2005, which was prepared prior to the completion of the disciplinary

hearing,  indicated that the incident was caused by plaintiff coming off  "of the wall during a pat

frisk and str[iking] . . . Benson in the chest", but failed to mention plaintiff's version of events.

[131-3], Bates No. 000243.  To the extent it was defendant Kearney's role to ensure  that the

---

[8]  Although not argued by defendants, some cases have noted that "[a] hearing officer may
satisfy the standard of impartiality if there is 'some evidence in the record' to support the findings of the
hearing".  <u>Fernandez</u>, 2010 WL 4320362 at *12 *citing* <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985).
*See* <u>Murray v. Jacobs</u>,  2011 WL 4074531, *8 (W.D.N.Y. 2011) (Siragusa, J.) (same).

Final Unusual Incident Report was factual, this suggests that, even before the conclusion of the hearing, he may have viewed it as being a complete and factual verison of the events.

During the hearing, defendant Kearney's conduct, at times, also suggested that he had prejudged the witnesses' credibility.   For example, when plaintiff attempted to question defendant Benson about whether he was already on the wall when he allegedly reached his hand into his pocket, defendant Kearney stated - "I will ask him any question that you give me to ask him, however, it's clearly in the body of the report".  Hearing transcript [124-2], Bates Nos. 00040-41.  After plaintiff explained that he was asking this question in order to attempt to demonstrate inconsistences in defendant Benson's version of events, defendant Kearney stated - "I understand that you're defending yourself . . . . [b]ut I can't sit here while you say that he lied in the report" (id., Bates No. 000041).  While defendants  characterize this as defendant Keareny's attempt to remind plaintiff that he could not call defendant Benson a liar (defendants' Reply Memorandum of Law [144], p. 10 of 15), this explanation is difficult to reconcile with the fact that plaintiff never directly accused defendant Benson of lying, and with defendant Kearney's testimony that he considered plaintiff to be respectful toward him and the witnesses. Kearney's deposition transcript [145], p. 141.

Likewise, when plaintiff attempted to question Krathaus about his version of events, defendant Kearney reverted to the misbehavior report, apparently considering it to be an accurate report of the incident. For example, when plaintiff attempted to ask - "Did Officer Benson grab me with one hand or two hands?", defendant Kearney stated - "Well, the body of the report indicates that . . . you moved his arm into your arm".   Hearing transcript [124-2], Bates No. 000062.  Significantly, at the conclusion of Krathaus' testimony, Kearney told him "good

job" (id., 000063).

Furthermore when plaintiff attempted to ask defendant Benson how he grabbed him, defendant Kearney stated -  "He's testified that he grabbed your shirt" (id., Bates No. 000037).  Yet, defendant Benson never testified that he grabbed plaintiff's shirt.  In fact, when defendant Benson was later asked this question, he did not testify that he grabbed plaintiff's shirt (id.).

Defendants point to a variety of conduct as establishing defendant Kearney's impartiality, including assisting  plaintiff to identify and locate  his inmate witnesses, finding plaintiff not guilty of some of the charges,  permitting plaintiff to speak at length in his own defense and to raise a number of objections, and advising him of his appeal rights if he disagreed with his rulings at the hearing. Defendants' Memorandum of Law [125], p. 8.  On balance, I conclude that there  exists a genuine issue of material fact as to whether defendant Kearney was an impartial hearing officer which must be resolved by a jury.

**5.      Written Disposition**

Plaintiff argues that "by merely reciting every piece of evidence and identifying every testifying witness, as defendant Kearney did, the fact-finder does not give any meaningful idea of either the evidence that he rejected or the evidence upon which he relied".  Plaintiff's Memorandum of Law [134], p. 18.

Defendant Kearney prepared a written statement of the evidence he relied upon ([124-1], Bates No. 000182), which he read into the record:

> "[T]he misbehavior report authored by Correction Officer Benson.
> The testimony of Officers Benson and Krathaus at the tier  hearing,

> the testimony of Inmate Vigliotti at the hearing, the vigorous
> defense he put on, as well as the numerous objections he raised.
> Also taken into consideration is the unusual incident packet, the
> use of force forms and the memos contained therein, the testimony
> of Inmate Vigliotti's witnesses, inmates Hall and Wells". Hearing
> transcript [124-2], Bates No. 000082.

Defendant Kearney also prepared a written statement of the reasons for his disposition ([124-1],

Bates No. 000182), which he read into the record:

> "The disposition as always is put in place in an effort to modify the
> inmates behavior to acceptable limits. It is hoped that it will do so
> in the future. The disposition shall serve to impress upon the
> inmate that this type of behavior will not be tolerated in the
> correctional setting. The hearing officer notes that this the second
> time charges of this type have been lodged  against the inmate
> during this incarceration." Hearing Transcript [124-2], Bates Nos.
> 000082-83.

> "[I]n order to comply with constitutional due process standards, the only record of

a disciplinary hearing that must be maintained is a written statement describing the evidence

relied upon and the reasons for the determination". Murray v. Jacobs, 2011 WL 4074531, *6

(W.D.N.Y. 2011) (Siragusa, J.).  As explained in Wolff, the purpose of requiring a  written

statement containing the evidence relied on and reasons for the disciplinary action is to "protect

the inmate against collateral consequences based on a misunderstanding of the nature of the

original proceeding" and "to insure that administrators, faced with possible scrutiny by state

officials and the public, and perhaps even the courts, where fundamental constitutional rights

may have been abridged, will act fairly." Wolff,  418 U.S. at 565.

> "While a more detailed discussion of the evidence on which [the hearing officer]

relied would have been desirable, given the existence of the transcript, due process has been

satisfied." Allah-Kasiem v. Sidorowicz, 2012 WL 2912930, *12  (S.D.N.Y. 2012). Therefore,

-14-

this claim is dismissed.


**E.      Defendant Selsky**

Defendants argue that since due process does not include the right to an

administrative appeal, plaintiff's claims against defendant Selsky must be dismissed. Defendants'

Memorandum of Law [125], p. 9 of 13.  "Courts have repeatedly held that the Fourteenth

Amendment does not require any administrative review of disciplinary convictions".  Excell v.

Woods,  2009 WL 3124424, *22  (N.D.N.Y. 2009) (citing cases).  "Nevertheless, once the

state has created a right to administrative review, it cannot deprive a prisoner of that right

arbitrarily . . . .  Therefore, once an officer has been assigned by state law to decide an issue that

may result in the loss of a liberty interest,  that officer may, depending on how he exercises his

authority, be personally involved in the deprivation of a due-process right that arises from the

imposition of a disciplinary sentence of sufficient severity."  Thomas v. Calero,  824 F.Supp.2d

488, 504 (S.D.N.Y. 2011).[9]

Defendants next argue that defendant Selsky lacks sufficient personal involvement

since there is "no evidence . . . that [he] took a proactive role in reviewing Plaintiff's

administrative appeal".  Defendants' Memorandum of Law [125], pp. 10-11 of 13.  "Courts

within this circuit have held . . . that while personal involvement cannot be founded solely on

---

[9]      *Compare with* Gates v. Selsky, 2005 WL 2136914, *10 (W.D.N.Y.),  recon. granted on
other grounds 2005 WL 3132725 (W.D.N.Y. 2005) (Scott, M.J.) ("As for defendant Selsky, plaintiff
does not have a due process right to an administrative appeal or to a particular result in such an appeal.
Therefore, plaintiff's due process claims against . . . Selsky also fails").

supervision, liability can be found if the official proactively participated in reviewing the

administrative appeals as opposed merely to rubber-stamping the results." Collins v. Ferguson,

804 F.Supp.2d 134, 140 (W.D.N.Y. 2011) (Larimer, J.).

Since I have found a question of fact as to whether certain of defendant Kearney's

conduct violated plaintiff's due process rights, I likewise find that a triable issue of material fact

exists as to whether defendant Selsky's conduct in affirming defendant Kearney's determination

also violated plaintiff's due process rights, especially given the fact that he received from

plaintiff a voluminous written appeal [132-5], followed by subsequent lengthy motion for

reconsideration [132-6] and testified that his decision on the appeal was "not a rubber stamp

decision".  Selsky deposition transcript [131], pp. 42-43.  *See* Smith v. Rosati, 2013 WL

1500422, *8 (N.D.N.Y.), adopted 2013 WL 1501022 (N.D.N.Y. 2013) ("I find that a reasonable

factfinder could conclude, if plaintiff's testimony is credited, that defendant Prack's review of

plaintiff's disciplinary conviction revealed a due process violation, and by defendant Prack

dismissing plaintiff's appeal, he failed to remedy that violation").  Therefore, defendant Selsky is

not dismissed from this action.


**CONCLUSION**

For these reasons, defendants' motion for partial summary judgment [123] is

granted in part and denied in part, and plaintiff's motion for partial summary judgment [131] is

denied.

**SO ORDERED**.

Dated:  April 14, 2014

/s/ Jeremiah J. McCarthy

JEREMIAH J. MCCARTHY
United States Magistrate Judge
